HEANEY, Circuit Judge.
 

 This matter is before this Court on the bankruptcy appeal of Gary Gene Schwart-ing. The bankruptcy court held that Schwarting should be denied a discharge in bankruptcy and that his debt to Iowa State Bank and Trust Company was nondis-chargeable. The district court affirmed this decision on appeal. We affirm the district court.
 

 Gary and Leanne Schwarting are young farmers in Iowa. Beginning in 1975, they entered a series of transactions with Iowa State Bank that culminated in their bankruptcy and the present lawsuit.
 
 [1]
 
 In December, 1975, Iowa State loaned Schwarting $8,000 to make payments on his machinery debt. In February, 1976, the bank approved a loan of $66,000 to Schwarting. Between February 5, 1976, and February 14, 1977, in a series of transactions, Iowa State loaned an additional $37,330 to the
 
 *1194
 
 appellant. On February 14, 1977, Schwart-ing renewed $15,000 of his principal debt to the bank.
 

 Schwarting apparently made no false statements to Iowa State to obtain the December, 1975, loans. In the subsequent transactions, however, the appellant made false representations to the bank. Schwarting provided Iowa State with financial statements on February 5,1976, and February 14, 1977, that were inaccurate in several respects, including listing assets not owned, omitting some assets, and omitting several debts. Moreover, at various times during this entire series of transactions, Schwarting pledged as security to the bank certain assets that he had already pledged elsewhere and some other assets that he did not own. Finally, the appellant disposed of certain assets that were covered by security agreements with the bank and purchased additional machinery on credit. Schwart-ing completed these transactions without Iowa State’s consent in violation of his agreements with the bank.
 

 On September 12, 1977, Schwarting filed a voluntary petition in bankruptcy praying for relief under the Bankruptcy Act of 1938, 11 U.S.C. § 1
 
 et seq.
 

 [2]
 

 After a trial, the bankruptcy court held that pursuant to 11 U.S.C. § 32(c)(3), Schwarting should be denied discharge from his debts; that pursuant to 11 U.S.C. § 35(a)(2), the debt owed to Iowa State should be excepted from any discharge granted to the appellant; and that in the event the final order provided that Schwarting should be granted a discharge, but the debt owed to the bank was nondischargeable, Iowa State should receive judgment in the amount of $86,224.37, plus interest.
 

 Schwarting appealed the bankruptcy court’s decision to the United States District Court for the Northern District of Iowa, which affirmed. He now brings this appeal to this Court.
 

 The discharge and dischargeability provisions of 11 U.S.C. § 32(c)(3) and 11 U.S.C. § 35(a)(2), respectively, require that the creditor establish that the debtor provided false financial statements with intent to deceive and that the creditor relied on the false statements in extending the loan.
 
 Matter of Garman,
 
 643 F.2d 1252, 1258 (7th Cir. 1980),
 
 cert. denied,
 
 450 U.S. 910, 101 S.Ct. 1347, 67 L.Ed.2d 333 (1981);
 
 Clancy v. First National Bank of Colorado Springs,
 
 408 F.2d 899, 902-903 (10th Cir.),
 
 cert. denied,
 
 396 U.S. 958, 90 S.Ct. 430, 24 L.Ed.2d 422 (1969). Both the bankruptcy court and district court below found that Schwarting made materially false statements regarding his financial condition with intent to deceive and that the bank relied on these statements.
 

 Schwarting concedes that the financial statements of February 5, 1976, and February 14, 1977, were not accurate. He argues, however, that he did not act with intent to deceive. The appellant claims that his banker, Alan Burr, prepared the inaccurate financial documents even though Schwarting previously informed him that he owed money to the creditors not listed on the financial statements and that Schwarting had already pledged some of his assets to other creditors. Moreover, Schwarting alleges that Burr knew of and consented to his additional equipment purchases. Burr denies these allegations. Finally, the appellant claims that he did not know that the statements contained inaccurate information because he was not given an opportunity to fully read the completed documents prepared by Burr.
 

 For these reasons, Schwarting also claims that Iowa State could not have relied on false information provided by him in deciding to make the loans. Moreover, Schwart-ing alleges that in determining whether to loan him the initial $66,000, the bank relied solely on the accurate income projection prepared by Schwarting and Burr. In contrast, Iowa State claims that it utilized Schwarting’s financial statement, as well as the income projection, in making its decision.
 

 
 *1195
 
 The intent and reliance issues here present close questions. Nonetheless, after carefully reviewing the record and briefs, and hearing oral argument, we cannot say that the bankruptcy court’s factual findings on these issues are clearly erroneous.
 

 Schwarting next contends that Iowa State cannot seek to bar his discharge or obtain a holding of nondischargeability of his debt to the bank because it failed to comply with Iowa Code § 537.5110.
 

 The Iowa Consumer Credit Code (ICCC) requires that in consumer credit transactions, a creditor must give a debtor notice of the debtor’s right to cure his or her default “before exercising any right [the creditor] may have to enforce.” Iowa Code § 537.5110. Some of the promissory notes here stated that “this is a Consumer Credit Transaction.” The notes also stated that upon default, the bank “may proceed to enforce its rights by notice and otherwise as provided by law.”
 

 It is undisputed that the bank failed to give Schwarting notice of his right to cure before instituting its 11 U.S.C. § 32(c)(3) and § 35(a)(2) actions. Nonetheless, the district court held that the bank could pursue its claims to bar Schwarting from discharging his debt to it. The district court gave two reasons for its decision:
 

 First of all, his loans were not “consumer loans”.
 
 See
 
 Iowa Stat. §§ 537.-1301(10), .1301(11), .1301(14). Therefore, ISB was under no requirement to notify Schwarting of a right to cure default. Secondly, even if the loans were subject to the ICCC, Schwarting waived any right to notice of his right to cure his default when he filed his petition for voluntary bankruptcy.
 

 We do not agree that the loans here were not consumer credit transactions within the meaning of the Iowa Consumer Credit Code. In
 
 First National Bank v. Crouch,
 
 287 N.W.2d 151, 153 (Iowa 1980), the Iowa Supreme Court held that when a promissory note states that the loan is a consumer credit transaction, the debtor is entitled under the ICCC to receive notice of his or her right to cure a default even if the transaction was not a “consumer loan” within the definition of the statute. Nevertheless, we affirm the district court’s decision on this issue because we agree that Schwarting waived his right to notice of his right to cure when he filed his petition for voluntary bankruptcy. By filing that petition, the appellant was, in essence, conceding that he could not cure his default and, therefore, a notice of his right to cure would be of no value to him.
 

 Finally, Schwarting contends that the bankruptcy court erred in permitting the bank to amend its complaint to include the 11 U.S.C. § 35(c) action and in entering a money judgment against him when the bank failed to include a “demand for judgment” in its complaint as required by Fed. Rule Bank. 409(b). The district court found no merit in these contentions. We agree.
 

 The decision of the district court is affirmed.
 

 [1]
 

 . The bankruptcy court held that Leanne Schwarting should be granted a discharge and that the debt she owed to the bank should not be excepted from her discharge. No appeal was taken from this decision.
 

 [2]
 

 . Citations in this opinion will be to the Bankruptcy Act of 1938 rather than the present statute.